**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE CHARLES, | |
| Plaintiff, | Case No. 16-cv-679 |
| v. | Judge John Robert Blakey |
| CITY OF CHICAGO, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter concerns the detention and treatment of Plaintiff George Charles during a police search of his neighbor's home. Plaintiff initiated this action against Defendant Officers and the City of Chicago in January 2016 and asserts the following claims: (I) Excessive Force and Failure to Intervene, in violation of 42 U.S.C. § 1983; (II) Battery; (III) False Arrest and Failure to Intervene, in violation of § 1983; (IV) False Imprisonment; (V) Supervisory Liability under § 1983; (VI) liability for the City of Chicago under state indemnification law; and (VII) respondeat superior liability for the City. [1]. Defendants seek summary judgment with respect to Defendants Lieutenant Wiberg and Officers Uldrych and Barango on Counts I and II; summary judgment for all defendants on Counts III and IV; summary judgment for Lieutenant Wiberg on Count V; and summary judgment for the City of Chicago on Counts VI and VII to the extent that any underlying claims are disposed of. [36]. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I. Background

On May 19, 2014, Defendants Lieutenant Wiberg and Officers Ortiz, Skarupinski, Barango, and Uldrych (Defendant Officers) executed a search warrant in Chicago, Illinois. DSOF ¶ 9.[1] Plaintiff resided next door to the target address. *Id.* ¶ 13. The two homes form one structure with a shared front porch; two concrete walkways lead up to the two front doors across the otherwise undivided front yard, and separate driveways lead past each side of the building toward a backyard. [44-2]; [38-5] at 19. When Defendant Officers arrived to execute the search warrant, Plaintiff was on his property, working on his car. DSOF ¶ 13. Plaintiff was either in his backyard or in his driveway, but in any event Plaintiff was underneath his car and unaware of the search until Defendant Officer Skarupinski approached him. *See id.* ¶ 13, 15; [38-5] at 20.

Officer Skarupinski was establishing a security perimeter around the target of the search warrant. DSOF ¶¶ 11, 12, 14. Police officers executing a search warrant establish a perimeter for the safety of the officers and any bystanders. *Id.* ¶ 11; [38-4] at 5. The perimeter includes at least "the four corners" of the target location, and in this case such perimeter covered the front yard, both driveways, and the back of the building. DSOF ¶ 12; [38-4] at 5–6. Skarupinski knew that the building contained two residences but he considered Plaintiff's property to be within the perimeter because the two homes were within one structure. DSOF ¶ 12; R.

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. DSOF refers to Defendants' statement of undisputed facts [38], with Plaintiff's responses [44] cited as R. DSOF. PSAF refers to Plaintiff's statement of additional undisputed facts [45], with Defendants' responses [49] cited as R. PSAF. References to additional filings are by docket number.

PSAF ¶ 3. The parties agree that when Skarupinski arrived, Plaintiff was not violating any laws. R. PSAF ¶ 4. From this point forward, the majority of material facts are disputed.

Plaintiff asserts that—with his head under the car—he asked who was in his yard and received no response. R. DSOF ¶ 15. He says he then looked out from under the car and saw Officer Skarupinski with his gun already drawn. *Id.* The parties agree that Skarupinski told Plaintiff about the search warrant, and that Plaintiff replied that his home was not the target address. R. PSAF ¶¶ 7–8. Plaintiff claims that Skarupinski then grabbed him by the collar, pulled him to his feet, and handcuffed him tightly; when Plaintiff complained of his discomfort, Skarupinski told him to "shut the fuck up" and tightened the cuffs further. PSAF ¶¶ 10–14; R. DSOF ¶ 15. Defendants admit that Skarupinski "may have been the officer to handcuff Plaintiff," R. PSAF ¶ 11, but otherwise deny any roughness. According to Defendants, Plaintiff became angry and profane with Officer Skarupinski, which presented a safety risk in the context of establishing a security perimeter and executing a search warrant. DSOF ¶¶ 10, 16, 18, 19.

Officer Skarupinski next brought Plaintiff around to the front of the house, at which point Plaintiff admits raising his voice at Skarupinski. PSAF ¶ 18. Out front, Plaintiff's next-door neighbors had also been detained and a "large crowd of people was gathering." *Id.* ¶ 20; DSOF ¶ 21. Plaintiff was left handcuffed in the front yard for between 20 and 45 minutes. R. PSAF ¶ 22. Plaintiff states that he was in pain from the handcuffs throughout this period. PSAF ¶¶ 20–25.

At this point, another disputed altercation occurred. Officer Ortiz had been searching the target home, but went out to the front yard where Officer Barango had apparently called for assistance. DSOF ¶ 23. Around this time, Lieutenant Wiberg also approached Plaintiff, who admits that he shouted at Wiberg and "told him shut the F up and that he wanted his handcuffs removed and the officers to get off his property." R. DSOF ¶ 30. Plaintiff states that the officers were profane in response. PSAF ¶ 30. Wiberg then ordered the officers to put Plaintiff in a squad car. R. DSOF ¶ 31. Plaintiff admits that he refused to go and resisted being taken to the car. R. DSOF ¶¶ 34, 36. According to Plaintiff, Officers Ortiz, Uldrych, and Skarupinski then choked, punched, and kicked him before dragging him to the squad car. PSAF ¶¶ 31, 34–40.

Defendants claim that when Lieutenant Wiberg ordered the officers to put Plaintiff in the squad car, Plaintiff was not yet under arrest; the officers were trying to prevent Plaintiff "from further agitating the crowd that was becoming hostile and potentially dangerous." DSOF ¶¶ 31–32. Defendants deny any physical abuse. R. PSAF ¶¶ 31, 34–40. Defendants also dispute Plaintiff's identification of Officer Uldrych as one of the officers involved in his detention and alleged abuse on the front lawn; they assert that Uldrych was the transport officer, and point to Plaintiff's own testimony that he did not interact with the transport officers at this time. *Id*. ¶¶ 31–32; [38-5] at 15.

The parties agree that Officer Barango helped pull Plaintiff into the squad car. R. DSOF ¶ 38. The parties also agree that Lieutenant Wiberg never touched

Plaintiff and that the officers at least believed they had probable cause to arrest Plaintiff for resisting and obstructing peace officers when they attempted to put him in the squad car. *Id.* ¶¶ 42–43. Finally, Plaintiff admits that he identified the officers that used force against him as having "dark hair, brown hair, sandy brown hair, or blonde hair," and that Officer Barango, by contrast, was bald. *Id.* ¶¶ 40–41.

Once in the squad car, Plaintiff was driven to the police station. *Id.* ¶ 47. At the station, Plaintiff was not processed; instead, Lieutenant Wiberg spoke with Plaintiff and ultimately decided that he should be released without charge. *See id.* ¶¶ 49–51. Plaintiff was at the station for about an hour, after which two officers drove him home. *Id.* ¶ 52.

Plaintiff brought this action in January 2016 against the City of Chicago, Lieutenant Wiberg, and Officers Ortiz, Skarupinski, Love, Ewing, Puszkiewicz, Soraghan, Pierce, Baker, Altenbach, Arrellano, Barango, Figus, Uldrych, and Casales. [1]. The claims against Officers Ewing, Puszkiewicz, Pierce, Baker, Arrellano, Figus, Casales, and Love have been dismissed by stipulation. [27, 35]. This Court also granted Defendant's motion to dismiss claims for punitive damages against Officer Barango, who died in September 2016. [32, 34] Still before the Court are Plaintiff's claims against the City, Lieutenant Wiberg, and Officers Ortiz, Skarupinski, Uldrych, and Barango.

## II. Legal Standard

A motion for summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The motion will be granted only if, viewing the record in the light most favorable to the nonmoving party, no jury could reasonably find in the nonmoving party's favor. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

## III. Analysis

The number of disputed material facts in this case requires this Court to deny Defendants' motion for summary judgment with respect to many of Plaintiff's claims. *See Anderson*, 477 U.S. at 248. Specifically, when resolving Plaintiff's claims requires a credibility determination between conflicting accounts, that determination properly belongs to the factfinder. *See id.* at 255; *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Plaintiff's admissions, however, have eliminated disputes about certain facts, and this Court grants summary judgment where those admissions leave "no genuine issue for trial." *A&M Records, Inc. v. A.L.W., Ltd.*, 855 F.2d 368, 372 (7th Cir. 1988).

This Court addresses each of Plaintiff's claims in turn. Defendants raise a qualified immunity defense for their actions relating to Plaintiff's initial detention and arrest; this Court considers that defense within its discussion of Plaintiff's claims for excessive force, false arrest, and false imprisonment.

## A. Excessive Force and Failure to Intervene

Claims that law enforcement used excessive force when "making an arrest, investigatory stop, or other seizure" are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Whether the force used in connection with a specific seizure is permitted under the Fourth Amendment turns on whether the officer's actions were "objectively reasonable in light of the facts and circumstances" as they appeared at the time. *Id*. at 396. A police officer who fails to intervene when he has reason to know that excessive force is being used may be liable under § 1983. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Plaintiff's excessive force claim incorporates all the events described above. Construed in Plaintiff's favor, his Complaint thus alleges excessive force during his initial detention as well as during the alleged subsequent beating. Defendants seek summary judgment on Plaintiff's excessive force and failure to intervene claim (I) with respect to Defendants Wiberg, Barango, and Uldrych.

### 1. Initial Detention

When Officer Skarupinski initially detained Plaintiff, it is undisputed that Plaintiff was within the security perimeter around the target of the search. DSOF ¶ 12. Police officers executing a search warrant "may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." *L.A. Cnty., Cal. v. Rettele*, 550 U.S. 609, 614 (2007). That can include detaining persons entering the security perimeter around the target location. *United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008). The right to detain someone "necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it," but the Fourth Amendment demands that such force be reasonable under the circumstances, balancing the citizen's interest against government intrusion with the "countervailing government interests." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (internal quotation marks omitted). To strike that balance, courts consider "the severity of the crime at issue"; "whether the suspect poses an immediate threat to the safety of the officers or others"; and "whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering" with an officer's "execution of his or her duties." *Id.*

Given the disputed nature of the facts surrounding the manner of Plaintiff's initial detention, this Court cannot resolve this fact-intensive inquiry at summary judgment. Plaintiff alleges being yanked to his feet by his shirt, handcuffed tightly, and, upon complaining of discomfort, having the handcuffs tightened further. *See* R. DSOF ¶¶ 15–20; PSAF ¶ 14. Plaintiff was then detained in his front yard for 20 to 45 minutes, complaining of pain from the handcuffs, even though the search of his neighbor's home was nearly complete. PSAF ¶¶ 20–25. Defendants deny any mistreatment and admit only that Plaintiff was detained for between 20 and 45 minutes. R. PSAF ¶¶ 10–23. Defendants also argue that Plaintiff's detention was necessary in light of the ongoing search, the presence of an increasingly hostile crowd, and Plaintiff's disruptive behavior. DSOF ¶¶ 21, 24–29; R. DSOF ¶ 30.

Construing these events in the light most favorable to Plaintiff, *McDonald*, 821 F.3d at 888, the reasonableness of Defendant Officers' actions cannot be

resolved at summary judgment. Officers do not have free rein to detain any person within a security perimeter in whatever manner and for however long they choose. The test for any seizure is its objective reasonableness; detention in connection with the execution of a search warrant can be unreasonable if it lasts an unreasonably long time, or involves "excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." *Rettele*, 550 U.S. at 614, 615. Given that during this initial detention, Plaintiff's version of events includes him not resisting the officers, not being suspected of a crime, and not attempting to flee, then the roughness allegedly applied to Plaintiff may have been unreasonable. *See Payne*, 337 F.3d at 779–80 (roughness in handcuffing and pinning plaintiff's arms was unreasonable where plaintiff did not resist, did not present a threat, did not attempt to flee, and was only charged with minor offenses).

Further, keeping Plaintiff purportedly painfully handcuffed for up to 45 minutes as the search neared or reached its completion could be unreasonable under Plaintiff's version of events. *Cf. Jennings*, 544 F.3d at 818–19 (it was reasonable to detain a person who entered the security perimeter "long enough to ensure that he was unarmed and uninvolved in criminal activity"); *see also Payne*, 337 F.3d at 779–80 (collecting cases in which improper use of handcuffs supported excessive force claims). This Court cannot determine otherwise as a matter of law based upon the conflicting testimony before it. *See Payne*, 337 F.3d at 781.

Whether Lieutenant Wiberg and Officers Barango and Uldrych remain liable for failing to intervene is likewise impossible to resolve at summary judgment. An

officer is liable for failing to intervene when he has both reason to know that excessive force is being used and "a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 324 F.3d 763, 774 (7th Cir. 2005) (internal quotation marks omitted). That opportunity exists if an officer could and should have cautioned the officer using excessive force to stop. *See id.*; *see also Yang*, 37 F.3d at 285. A failure to intervene claim generally presents questions of fact appropriate for the jury; it should not be decided at summary judgment if the underlying excessive force claims remain unresolved. *Abdullahi*, 423 F.3d at 774.

Here, all three officers were near or in the front yard where, construing the facts in Plaintiff's favor, Plaintiff may have been detained for an unreasonable amount of time in an unnecessarily painful manner. Lieutenant Wiberg was near Plaintiff while he was detained in front of the house. R. DSOF ¶ 29. Officer Barango called for assistance in the front yard, establishing that he, too, was nearby. DSOF ¶ 23. Officer Uldrych's location is disputed, but Plaintiff's deposition places him in the front lawn. R. DSOF ¶¶ 45–46. At a minimum, Uldrych could see and hear Plaintiff in the yard, even when near the squad car. [38-8] at 6. Plaintiff alleges that he told multiple officers of the pain from the handcuffs, and visibly gripped his porch railing to relieve the pain. PSAF ¶¶ 13–14, 21, 23, 25. Construed in the light most favorable to Plaintiff, these actions might have afforded the officers the opportunity to loosen the handcuffs or to request that they be loosened. *See Abdullahi*, 324 F.3d at 774. Therefore summary judgment cannot be granted on Plaintiff's failure to intervene claim. *See Payne*, 337 F.3d at 781.

Finally, Defendants are not entitled to qualified immunity with respect to Plaintiff's initial detention on these disputed facts. To determine whether an officer is entitled to qualified immunity at summary judgment, courts ask "whether the facts alleged, taken in the light most favorable" to the nonmovant, show that the officer violated a constitutional right, and whether that right was clearly established at the time. *Id.* at 775. These questions need not be answered in that order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If, as Plaintiff alleges, he was unreasonably and painfully handcuffed, Defendant Officers violated clearly established law on the use of excessive force. Precedent dating back decades before this case establishes that such actions would be unreasonable. *See Payne*, 337 F.3d at 779–80 (collecting cases). A reasonable officer would have known that taking or allowing such actions was unlawful. This is sufficient to deny qualified immunity on summary judgment, where inferences must be drawn in favor of the nonmovant. *See id.* at 780.

### 2. Alleged Abuse/Beating

Similar analysis also preserves Plaintiff's excessive force claim as to his alleged beating. The beating occurred in Plaintiff's front yard after Plaintiff resisted Lieutenant Wiberg's order that he be placed in the squad car. R. DSOF ¶¶ 32, 44–45. Plaintiff alleges that Officer Uldrych beat him and places Lieutenant Wiberg and Officer Barango in the front yard and near the squad car, respectively. *Id.* Given the highly visible nature of the abuse, as Plaintiff describes it, a reasonable jury could find that the officers in the vicinity were aware of the beating

and possessed an opportunity to tell the other officers involved to stop. *See Abdullahi*, 324 F.3d at 774.

The kind of assault alleged by Plaintiff, even if it occurred in response to Plaintiff's admitted resistance to being placed in the squad car, could be found unreasonable under the Fourth Amendment. According to Defendants' own account, the extent of Plaintiff's resistance consisted of holding on to his porch rail and "trying to pull away and walk in the opposite direction" of the squad car. DSOF ¶¶ 35, 37. The bare fact of resistance does not preclude a finding that excessive force was used; the normal factors for evaluating the use of force apply. *Gregory v. Oliver*, 226 F. Supp. 2d 943, 951 (N.D. Ill. 2002); *see also O'Leary v. Luongo*, 692 F. Supp. 893, 903–04 (N.D. Ill. 1988). Officers did not suspect Plaintiff of any crime up to the time that he resisted. Plaintiff was not armed, and did not otherwise pose a significant threat to the officers—in fact, Plaintiff was still handcuffed. Plaintiff's verbal protests may have interfered with Defendant Officers' execution of the search, but, construing the facts in Plaintiff's favor, the situation remained largely under control, with the inhabitants of the target home detained in handcuffs. PSAF ¶ 20. Under those circumstances, the force alleged—choking, kicking, and punching—went far beyond what would have been objectively reasonable to subdue and contain Plaintiff. *See DuFour-Dowell v. Cogger*, 969 F.Supp. 1107, 1119–20 (N.D. Ill. 1997) (throwing plaintiff to the ground when no "direct threat" was posed and plaintiff could have been restrained with less force was excessive force). Any of

the officers who witnessed such an alleged assault could and should have called on the participating officers to stop. *See Abdullahi*, 324 F.3d at 774.

Defendants dispute Plaintiff's version of events wholesale, and their account may very well prevail at trial. *See* DSOF ¶ 44. The credibility determination between Plaintiff's account and Defendant Officers' account, however, "is the job of the jury, and not the district court judge at summary judgment." *Payne*, 337 F.3d at 778. Summary judgment is therefore inappropriate as to Plaintiff's claims for excessive force and failure to intervene, with respect to the alleged assault.

### B. Battery

Defendants seek summary judgment for Lieutenant Wiberg and Officers Barango and Uldrych on Plaintiff's claim for battery. In Illinois, a claim for battery requires: (1) the intention to cause harmful or offensive contact with the person of another, which (2) results in harmful contact. *See, e.g., Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995). Battery also encompasses "nonharmful" but offensive contact that "offends a reasonable sense of personal dignity." *Id.*

With respect to Officer Uldrych, the foregoing discussion illustrates the continuing factual disputes about his contact with Plaintiff. Uldrych denies that he ever touched Plaintiff, [38-8] at 11, while Plaintiff alleges that Uldrych choked him for "one to two minutes," PSAF ¶ 31. The parties dispute Uldrych's role during these events and Plaintiff's subsequent identification of Uldrych as the man who choked him. R. PSAF ¶¶ 31–32. The evidence before this Court consists solely of the parties' conflicting accounts, presented in depositions and affidavits. *See* [38, 44]. As the Seventh Circuit has repeatedly warned, "summary judgment cannot be

used to resolve swearing contests between litigants." *Payne*, 337 F.3d at 770. Summary judgment is thus inappropriate as to Officer Uldrych.

With respect to Officer Barango, the parties agree that he "assisted in placing Plaintiff in the squad car and then assisted in getting Plaintiff into the vehicle by opening the other rear door, placing his arms under Plaintiff's armpits and pulling him into the car." DSOF ¶ 38; R. DSOF ¶ 38. The parties also agree that Barango's physical description does not match Plaintiff's description of the officers who allegedly assaulted him. DSOF ¶¶ 39–41.

Based upon these facts, Officer Barango is entitled to the protection of 745 ILCS 10/2-202 against Plaintiff's state-law battery claim. Section 10/2-202 bars liability for public employees engaged in the execution of "any law," unless their actions constitute "willful and wanton conduct." "Willful and wanton conduct" refers to "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 ILCS 10/1-210. Section 10/2-202 applies to officers effecting an arrest or detention. *See Jones v. Vill. of Villa Park*, 784 F. Supp. 533, 536 (N.D. Ill. 1992) (applying Illinois law). Officer Barango's alleged actions in no way rise to the level of "willful and wanton" conduct required to pierce his state tort immunity. Lifting and pulling Plaintiff into the squad car—absent any allegation of injury or other unreasonable force—was a reasonable use of Barango's authority. *See Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (finding that "pulling a suspect from a car, pushing him against the car, and

pinning his arms behind his back to handcuff him were reasonable actions" and not willful and wanton); *Gill v. Vill. of Melrose Park*, 35 F. Supp. 3d 956, 968 (N.D. Ill. 2014) (using minimally forceful contact to restrain plaintiff was not willful and wanton). Summary judgment for Officer Barango is therefore granted as to Plaintiff's battery claim (II).

With respect to Lieutenant Wiberg, Plaintiff admits that the Lieutenant never touched him. R. DSOF ¶ 43. Given that some sort of contact or intended contact is necessary to sustain a battery claim, *see Cohen*, 648 N.E.2d at 332, and Plaintiff has alleged neither, summary judgment for Lieutenant Wiberg is granted as to Plaintiff's battery claim (II).

### C.   False Arrest and False Imprisonment

Defendants seek summary judgment for all Defendant Officers and the City of Chicago on Plaintiff's claims for false arrest (III) and false imprisonment (IV). As these claims are closely related, this Court considers them together, addressing first Plaintiff's initial detention by Officer Skarupinski and his subsequent arrest.

### 1.   Initial Detention

#### a)    *§ 1983 False Arrest Claim (III)*

A false arrest claim requires that Plaintiff "show there was no probable cause for his arrest." *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). Plaintiff's false arrest claim centers on his initial detention by Officer Skarupinski and the 20 to 45 minutes that he was detained in his yard before he physically resisted being placed in the squad car. *See* [43] at 6. Plaintiff contends that he was arguably already under arrest at this time, and that Defendant officers lacked probable cause

or any individualized suspicion as a basis to detain him. *Id.* at 4–6. Plaintiff misunderstands the circumstances of his detention in two ways: he was not yet under arrest, and the officers on the scene of the search did not need probable cause or individualized suspicion to detain him.

Plaintiff suggests that he was under arrest when Officer Skarupinski allegedly pointed his gun at Plaintiff in the driveway. *Id.* at 5 n. 2. The case Plaintiff cites, however, does not support that conclusion. In *Sornberger v. City of Knoxville, Ill.*, the Seventh Circuit described an arrest as a "restraint on freedom of movement of the degree which the law associates with formal arrest." 434 F.3d 1006, 1017 (7th Cir. 2006). The Seventh Circuit relied on Supreme Court precedent establishing that a detention crosses the "line" between seizure and arrest when police officers "forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes." *Id.*, 434 F.3d at 1017 (quoting *Hayes v. Florida*, 470 U.S. 811, 815–16 (1985)). Plaintiff's initial detention thus lacks both ingredients of a de facto arrest: transportation to a police station and custodial interrogation. *See id.* Moreover, the Court has expressly found that being handcuffed while detained incident to search does not convert the detention to an arrest. *Muehler v. Mena*, 544 U.S. 93, 99–102 (2005).

The officers undoubtedly *seized* Plaintiff within the meaning of the Fourth Amendment, because a reasonable person would not have felt free to leave once Officer Skarupinski either pointed a gun at Plaintiff or handcuffed him. *See United*

*States v. Mendenhall*, 446 U.S. 544, 554 (1980); PSAF ¶ 11.  But those actions fail to constitute an arrest under the circumstances here, and as a result, Plaintiff's false arrest claim fails.  *See Bianchi v. McQueen*, 818 F.3d 309, 322 (7th Cir. 2016) (a false arrest claim arises "from a warrantless arrest without probable cause").  Even if this Court construes Plaintiff's false arrest claim to include a claim for an unreasonable seizure short of an actual arrest, *see Gonzalez v. Vill. of Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012), Plaintiff's claim still fails, because the undisputed portions of the record confirm that his initial detention was not unreasonable.

As noted above, officers executing a search warrant "may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search."  *Rettele*, 550 U.S. at 614.  That includes the right to detain a person within the security perimeter around the target residence, even if that person is not an inhabitant.  *See Jennings*, 544 F.3d at 818.  The Supreme Court has established an officer's "categorical" authority "to detain incident to a search," which police may exercise absent any particularized suspicion.  *Bailey v. United States*, 568 U.S. 186, 193 (2013).  The Court first set out this detention authority in *Michigan v. Summers*, which held that the minimal intrusiveness of temporary detention was outweighed by the government interests in officer safety, "the orderly completion of the search," and preventing flight from the scene.  452 U.S. 692, 702–03 (1981).

*Summers* approved the detention of someone leaving the target location, *id.* at 693, and various appellate courts, including the Seventh Circuit, have construed this detention authority to include persons arriving on the scene of a search or in

the immediate vicinity of the search's target location. *United States v. Allen*, 618 F.3d 404, 408 (3d Cir. 2010) (detaining a security guard standing in front of the bar to be searched was lawful); *United States v. Sanchez*, 555 F.3d 910, 918–19 (10th Cir. 2009) (detaining a nonresident on the curtilage of the home to be searched was reasonable); *Jennings*, 544 F.3d at 818 (detaining a person who drove into a security perimeter was reasonable); *United States v. Bohannon*, 225 F.3d 615, 616–17 (6th Cir. 2000) (detaining a nonresident approaching the home to be searched was lawful). The conclusion of these appellate courts was buttressed by the Supreme Court's ruling in *Bailey* that *Summers* detention authority includes at least "the immediate vicinity of the premises covered by a search warrant." 568 U.S. at 192.

Under this precedent, Defendant Officers' initial detention of Plaintiff incident to their authorized search of his neighbor's home was reasonable. It is true that Plaintiff was on his property and did not reside at the target location, but he was undisputedly within the security perimeter. R. DSOF ¶¶ 9, 11–12. That is sufficient to sustain his detention under the Seventh Circuit's precedent in *Jennings*, 544 F.3d at 818, and as set out further in *Summers* and *Bailey*. Plaintiff was located within the immediate vicinity of the target location, he was within the line of sight of that target, and he was close enough to disrupt the officer's "safe and efficient execution" of the search warrant. *See Bailey*, 568 U.S. at 201–02; *see also Jennings*, 544 F.3d at 818; *United States v. Pace*, 898 F.2d 1218, 1239 (7th Cir. 1990) (detaining nonresidents for duration of the search was reasonable); *Simmons v. City of Chicago*, No. 14-c-9087, 2017 WL 635144 at *7 (N.D. Ill. Feb. 16, 2017)

("Any person present during the search may be detained for its duration."). Although Plaintiff alleges that when Officer Skarupinski brought him to the front yard his neighbors were already detained, PSAF ¶ 20, he offers no evidence that the search had been completed, and admits that at least one officer was drawn away from executing the search to respond to Plaintiff's disruptive conduct in the front yard, R. DSOF ¶ 23. Detaining Plaintiff until the conclusion of the search was undoubtedly reasonable under these circumstances. *See Pace*, 898 F.2d at 1239.

Finally, even if Plaintiff alleged facts showing that his initial detention was unreasonable—which he has not done—Defendant Officers would be entitled to qualified immunity. Qualified immunity protects government officials from liability "insofar as their conduct does not violate clearly established" rights. *See Pearson*, 555 U.S. at 231 (internal quotation marks omitted). To overcome Defendant Officers' qualified immunity defense, Plaintiff needed to point to "existing precedent" that "placed the statutory or constitutional question beyond debate." *See Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). In other words, Plaintiff had the burden of identifying the "clearly established" law that Defendant Officers would have violated by detaining him incident to the search. *Id*. Plaintiff has offered no such precedent. *See* [43] at 8. Indeed, the strong weight of precedent supports the reasonableness of Plaintiff's initial detention under the circumstances. Accordingly, this Court grants summary judgment for all defendants on Plaintiff's false arrest claim (III) with respect to his initial detention.

### b)    *False Imprisonment Claim (IV)*

A similar analysis governs Plaintiff's common-law claims for false imprisonment. *See Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) (discussing overlap of the two claims).  In Illinois, false imprisonment requires that Plaintiff show "that his personal liberty was unreasonably or unlawfully restrained against his will and that defendant(s) caused or procured the restraint." *Arthur v. Lutheran Gen. Hosp.*, 692 N.E.2d 1238, 1243 (Ill. App. Ct. 1998).

As discussed, however, Plaintiff's initial detention was not unlawful.  It was a reasonable exercise of Defendant Officers' authority to detain persons incident to a search.  This analysis does not change for Plaintiff's state-law claim.  Illinois courts have applied *Michigan v. Summers* similarly to the federal courts, and have sustained the reasonableness of detaining nonresidents present at the location targeted by a search warrant.  *See People v. Wright*, No. 13-1487, 2016 WL 1592758, at *5 (Ill. App. Ct. Apr. 19, 2016) (detaining defendant in "the immediate vicinity of the targeted premises" was reasonable under *Summers* and *Bailey*); *People v. Conner*, 832 N.E.2d 442, 452–453 (Ill. App. Ct. 2005) (detaining nonresident present in searched location was reasonable).

In any event, Defendant Officers are entitled to state tort immunity with respect to Plaintiff's initial detention.  The immunity granted to officers enforcing the law applies to claims for false imprisonment.  *See Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 320 (Ill. App. Ct. 2006); 745 ILCS 10/2-202.  Plaintiff must allege "willful and wanton intent" to overcome that immunity.  *Neal v. City of Harvey, Ill.*, 1 F. Supp. 2d 849, 857 (N.D. Ill. 1998).  Plaintiff has alleged no facts to show that

his initial detention was willful and wanton—to the extent that the manner of his detention was otherwise "wantonly" unreasonable, those concerns remain addressed by Plaintiff's excessive force claims, which survive summary judgment. On Plaintiff's false imprisonment claim, however, summary judgment is granted to the defendants.

### 2. Arrest

The parties do not dispute that Defendant Officers had probable cause to arrest Plaintiff once he physically resisted being placed in the squad car. R. DSOF ¶ 42. 720 ILCS 5/31-1(a) prohibits any person from "knowingly" resisting or obstructing "the performance by one known to the person to be a peace officer" acting in official capacity. It covers any "physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties, such as going limp, forcefully resisting arrest, or physically helping another party to avoid arrest." *People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008).

Plaintiff clearly engaged in this prohibited conduct when he began to "pull away" from Defendant Officers and "walk in the opposite direction" of the squad car. DSOF ¶¶ 35, 37. At that point Defendant Officers had probable cause to arrest Plaintiff for the misdemeanor offense of resisting a peace officer.

Probable cause is an absolute defense to both a § 1983 false arrest claim and a common-law false imprisonment claim. *Neal*, 1 F. Supp. 2d at 857; *Lappin v. Costello*, 598 N.E.2d 311, 317 (Ill. App. Ct. 1992). Accordingly, summary judgment is granted to all defendants on Plaintiff's false arrest (III) and false imprisonment (IV) claims with respect to his arrest.

## D.     Supervisory Liability

Defendants seek summary judgment for Lieutenant Wiberg on Plaintiff's claim for § 1983 supervisory liability as it relates to Plaintiff's false arrest and false imprisonment claims. [37] at 11. Supervisory liability under § 1983 is appropriate where a supervisor "approves" of his subordinates' conduct "and the basis for it." *Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 869–70 (7th Cir. 2011). The supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id*. If, however, there is no underlying constitutional violation, there is no supervisory liability. *See, e.g., Gossmeyer v. McDonald*, 128 F.3d 481, 195 (7th Cir. 1997); *Beller v. Bd. of Trs. of Univ. of Ill.*, No. 97-c-4888, 1998 WL 832636, at *6 (N.D. Ill. Nov. 24, 1998).

Because this Court grants summary judgment to defendants on Plaintiff's false arrest and false imprisonment claims, it also grants summary judgment to Lieutenant Wiberg for any supervisory liability arising from those claims.

## E.     The City's Liability

Plaintiff brought claims against the City of Chicago as Defendant Officers' employer, based upon Illinois statutory liability for public employers (VI) and a theory of respondeat superior (VII). [1] Defendants seek summary judgment for the City on both claims to the extent that Defendant officers are awarded summary judgment on any of the underlying claims. [37] at 15.

The City's statutory liability arises under the indemnification provision of 745 ILCS 10/2-109, which makes local public entities responsible for damages arising from their employees' liability. To the extent that the City's employees are

not liable for any claim, the City cannot be liable under § 10/2-109. *See, e.g., Miles v. Vill. of Dalton*, No. 15-cv-5017, 2016 WL 1161293, at *8 (N.D. Ill. Mar. 23, 2016) (applicability of statute depends upon employee liability). Therefore the City is granted summary judgment with respect to Plaintiff's false arrest and false imprisonment claims, but the City remains potentially liable on the other claims pending against the Defendant Officers.

This Court, however, grants the City of Chicago summary judgment on Plaintiff's claim for respondeat superior liability (VII) with respect to Plaintiff's § 1983 claims. Municipalities like the City "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see also Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). A municipality can only be liable under § 1983 for constitutional violations that arise from government "custom or usage." *Monell*, 436 U.S. at 691. Plaintiff has alleged no such custom, usage, or policy. [1] Proof of a "single incident of unconstitutional activity is not sufficient to impose" liability on a municipality, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Lanigan*, 110 F.3d at 479. Thus, even if Plaintiff ultimately prevails on his excessive force claim, as a matter of law, he could not thereby impose liability on the City where he has offered no evidence—nor alleged any basis for inferring—that the violation was the result of an unconstitutional municipal policy or custom. *See id.* Summary judgment for the

City is therefore granted as to Plaintiff's respondeat superior claim (VII) as it relates to his § 1983 claims.

### F.    Request to Strike Rule 56 Statements

Lastly, Plaintiff has asked this Court to disregard certain paragraphs in Defendants' Local Rule 56.1 statement of facts, on the grounds that they are too long, or contain improper argument.  [43] at 11–13.  Rule 56.1 statements must contain only material facts; consist of "only one or two individual allegations"; and be supported by "specific reference" to the record.  *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).  Legal conclusions are inappropriate and should be disregarded. *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 1997).  If a party fails to comply with Rule 56.1, district courts have the discretion to disregard any improper statements.  *See id.*; *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817 (7th Cir. 2004); *see also Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (district court interpretations of local rules receive "considerable weight").

Plaintiff objects to the following paragraphs of the Defendants' statement of facts [38] as improper: paragraphs 15–17, 19, 29, 31, 32, 33, and 45 as too long and compound; and paragraphs 25, 27, 29, 32, 33, 35, 37, and 44 as containing improper argument.  This Court disagrees that the first set of paragraphs are improperly long.  Rule 56.1 "does not mandate that each numbered paragraph" in a party's statement of facts contain only one, discrete fact.  *Ronald A. Chisholm, Ltd. v. Fulton Mkt. Cold Storage Co. LLC*, No. 9-c-4623, 2011 WL 6182347, at *1 (N.D. Ill. Dec. 13, 2011).  Paragraph 16 arguably approaches the limit of what the rule permits, containing a number of distinct quotes attributed to Plaintiff.  DSOF ¶ 16.

But Plaintiff allegedly spoke each phrase to Officer Skarupinski in a brief period, and it is logical that Defendants grouped them together. Nor was Plaintiff's response to this statement hampered by its supposed length; rather, Plaintiff disputes the nature of all of his interactions with Officer Skarupinski and his responses were used to set forth his basis for doing so. R. DSOF ¶ 16. This is an appropriate use of Rule 56.1. The other paragraphs are even more concise, and this Court declines to reject them on these technical grounds.

This Court also declines to strike paragraphs 25, 27, 29, 32, 33, 35, 37, and 44 of Defendants' statement of facts. Although paragraphs 25, 27, and 29 certainly contain evocative adjectives, they remain supported by factual allegations. For example, paragraph 27 states that Plaintiff was "belligerent and agitated *in that* he was yelling and screaming." DSOF ¶ 27 (emphasis added). Furthermore, Plaintiff has admitted to other paragraphs that support those allegations, acknowledging that he raised his voice and used profanity towards Lieutenant Wiberg. R. DSOF ¶ 30. Paragraphs 35 and 37 rest upon similar factual allegations. Finally, paragraphs 32, 33, and 44 fail to contain improper legal conclusions simply because their language echoes legal claims. When Defendants deny that any officer "used force against Plaintiff," they specifically state that they deny this allegation, because they never saw any officer "strike, punch, kick or choke Plaintiff." DSOF ¶ 44. Paragraphs 32 and 33 simply convey events from Defendant Officers' perspective, based upon their depositions. As such, this Court declines to totally disregard the disputed statements, and instead properly views them in context.

Even if this Court granted Plaintiff's request to disregard these paragraphs, the outcome here would not differ and, as required by the summary judgment standard, this Court has construed all events in the light most favorable to Plaintiff. *McDonald*, 821 F.3d at 888. That includes accepting Plaintiff's evidence and drawing "all justifiable inferences" in his favor. *Anderson*, 477 U.S. at 255. This Court has done so, and has rendered judgment accordingly.

## IV. Conclusion

In light of the foregoing, Defendants' motion for summary judgment is granted in part and denied in part as follows: (1) Summary judgment is denied on Count I; (2) Summary judgment on Count II is granted as to Officer Barango and Lieutenant Wiberg, and otherwise denied; (3) Summary judgment is granted to Defendants on Count III; (4) Summary judgment is granted to Defendants on Count IV; (5) Summary judgment is granted to Lieutenant Wiberg on Count V with respect to the underlying claims for false arrest and false imprisonment; (6) Summary judgment is granted to the City of Chicago on Count V with respect to the underlying claims for false arrest and false imprisonment; and (7) Summary judgment is granted to the City of Chicago on Count VII with respect to all underlying § 1983 claims. The case remains set for a pretrial conference at 1:30 p.m. on 2/15/2018 in Courtroom 1203. All other dates and deadlines stand.

Dated: January 8, 2018

Entered:

John Robert Blakey
United States District Judge